UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JESSICA EISENBARTH, *on behalf of herself and others similarly situated*,<br><br>-against-<br><br>LESSING'S, INC., LESSING'S RESTAURANT SERVICES, INC., JAMES OLSEN, ELLEN BARRET, ANN BRESNAN, ROBERT B. FERGUSON, LAWRENCE LESSING III, JOHN S. LESSING, J.R., JOHN S. LESSING, MARK K. LESSING, MICHAEL S. LESSING, SANDRA M. LESSING, THOMAS S. MCKELVEY, and STEPHEN ZAGOR<br><br>Defendants, | Case No.:1:23-cv-2779<br><br>**FLSA COLLECTIVE AND CLASS ACTION COMPLAINT** |

Plaintiff JESSICA EISENBARTH ("Plaintiff"), on behalf of herself and all others similarly situated, by attorneys Sacco & Fillas LLP, complaining of Defendants LESSING'S, INC., LESSING'S RESTAURANT SERVICES, INC., JAMES OLSEN, ELLEN BARRET, ANN BRESNAN, ROBERT B. FERGUSON, LAWRENCE LESSING III, JOHN S. LESSING, J.R., JOHN S. LESSING, MARK K. LESSING, MICHAEL S. LESSING, SANDRA M. LESSING, THOMAS S. MCKELVEY, and STEPHEN ZAGOR (collectively, "Defendants"), alleges, upon information and belief:

1. **INTRODUCTION**

    1.      This is a wage and hour collective and class action. Plaintiff was a bartender and server at Defendants' restaurant, "Sandbar" at 55 Main Street, Cold Spring Harbor, New York 11724. Defendants are employers—owners and managers— at the Sandbar restaurant. Plaintiff, and similarly situated employees, were not paid wages. Instead, Plaintiff's compensation came solely from tips / gratuities. Plaintiff was regularly required to give up a portion of her gratuities to a manager and the restaurant.

2.      Plaintiff brings this action on behalf of herself and all other similarly situated non-managerial employees to recover unpaid minimum and overtime wages, spread-of-hours pay, liquidated damages, statutory damages, pre- and post-judgment interest, misappropriated gratuities, and attorneys' fees and costs pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"), the New York Labor Law § 190, et seq. ("New York Labor Law"), and the New York Labor Law's Wage Theft Prevention Act ("WTPA").

3.      Sandbar is a restaurant as defined in N.Y. Comp. Codes R. & Regs. tit. 12, § 146-3.1.

## 2.  JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337 and has supplemental jurisdiction over Plaintiff's New York Labor Law claims pursuant to 28 U.S.C. § 1367.

5.      Venue is proper in the Eastern District of New York under 28 U.S.C. § 1391 because Defendants' restaurant is located and operated by Defendants in the Eastern District of New York and the events giving rise to Plaintiffs' claims occurred in the Eastern District of New York.

## 3.  PARTIES

### 3.1. PLAINTIFF

#### 3.1.1. JESSICA EISENBARTH

6.      Plaintiff JESSICA EISENBARTH currently resides in Fort Lauderdale, Florida.

7.      Plaintiff JESSICA EISENBARTH worked as a bartender and server at the Sandbar restaurant from approximately August 2020 until approximately August 2021.

8.      As a bartender, Plaintiff regularly served alcoholic beverages to customers.

### 3.2. DEFENDANTS

9.      Lessing's Hospitality Group is comprised of over 100 locations throughout the Northeast and Florida. Lessing's operates 20 wedding and catering venues, 19 full-service

restaurants, 2 pop-up kitchen concepts, over 60 corporate and academic dining centers, and a historic inn. https://www.lessings.com/corporate/about#mission_statement.

10.      The restaurants under Lessing's Hospitality Group are all advertised on the same platform, https://www.lessings.com/corporate/home, and this website provides links to the individual websites of all the individual restaurants operating under the Lessing's Hospitality Group.

11.      The executive staff of the Lessing Hospitality Group consists of several family members.

12.      Lessing's Hospitality Group advertises that it is the oldest family-owned, continuously operated, highly diverse food service company in the United States.

13.      Lessing's Hospitality Group was founded by Maxwell Lessing in 1890 and is operated to this day by approximately 15 family members representing six generations of Lessing's.

14.      Lessing's Hospitality Group offers employment opportunities on its website for its multiple restaurants and catering halls at https://lessingsinc.peoplematter.jobs/.

15.      For ADA accessibility to Sandbar's website, visitors are directed to contact accessibility@lessings.com and told that "Sandbar and Lessing's Hospitality Group are committed to ensuring digital accessibility for people with disabilities.

16.      Lessing's Hospitality Group shares a corporate headquarters at 3500 Sunrise Highway Bldg 100, Suite 100, Great River, NY 11739.

17.      Plaintiff was told that she could be moved to another restaurant within Lessing's Hospitality Group.

18.      Defendants moved employees between restaurants and other services. For instance, an employee moved from catering in the Lessing's Hospitality Group to work as a sous chef in Sandbar and then was transferred to the catering business in Lessing's Hospitality Group.

19.     Upon information and belief, Plaintiff's coworkers simultaneously worked at other Lessing Hospitality Group restaurants.

20.     Defendants held management meetings at Sandbar approximately once per week or once per quarter.

21.     The Sandbar shared food and beverages approximately once per week between Sandbar and one or more other restaurants held by Lessing's Hospitality Group.

22.     Defendant MICHAEL S. LESSING hired Chef Emeritus Senior Advisor Guy Reuge at Sandbar restaurant.

23.     Chef Guy Reuge has worked at other Lessing's Hospitality Group restaurants including Mirabelle Restaurant & Tavern, Three Village Inn in Stony Brook

24.     Defendants' labor relations and human resources are centrally organized and controlled. For instance, Defendant ELLEN BARRET is the director of human resources and has been employed in human resources since approximately September of 2010 for Lessing's Hospitality Group.

25.     All individual Defendants appear as principals on liquor licenses for Defendant LESSING'S, INC., LESSING'S RESTAURANT SERVICES, INC., and COLD SPRING HARBOR MANAGEMENT LLC (d/b/a "Hatch" restaurant), and SOUTHLAND RESTAURANT CORP (d/b/a "Post Office Café" restaurant) which are all under the umbrella of Lessing's Hospitality Group.

26.     Defendants were part of a single integrated enterprise that jointly employed Plaintiff and similarly always situated employees.

27.     Defendants constitute a joint or single employer through their interrelation of operations, centralized control of labor relations, common management, and common ownership or financial control.

28.    Upon information and belief, each Defendant has or had substantial control over Plaintiff's working conditions and over the unlawful policies and practices alleged herein.

29.    Upon information and belief, Defendants' operations are interrelated and unified.

30.    Upon information and belief, during all relevant times, Defendants shared a common management and was centrally controlled and/or owned by Defendants.

31.    Upon information and belief, during all relevant times, Defendants have had control over, and the power to change, compensation practices at Sandbar restaurant.

32.    Upon information and belief, Defendants have has the power to determine employee policies at Sandbar restaurant, including, but not limited to, timekeeping and payroll policies.

33.    Defendants share common management, including oversight and management by a senior executive team and board of directors.

34.    Upon information and belief, defendants have common ownership.

35.    Defendants are the employer (single, joint, or otherwise) of the Plaintiff, and/or alter egos of each other.

36.    Defendants comprise a single, integrated enterprise, as they perform related activities through common control for a common business purpose.

37.    Considering the economic realities of the enterprise operated by Defendants, Defendants are joint employers of Plaintiff.

38.    Plaintiff is, or has been, jointly employed by Defendants.

39.    During all relevant times, Defendants have been Plaintiff's employers and/or joint employers within the meaning of the FLSA and NYLL.

### 3.2.1. **LESSING'S, INC.**

40.    Defendant LESSING'S, INC. is a New York domestic business corporation, licensed to do business and doing business in the state of New York.

41.     Defendant LESSING'S, INC. designated an agent for service of process as MICHAEL S. LESSING at 3500 Sunrise Highway, Suite 100, Building 100, New York, New York 11739.

42.     Defendant LESSING'S, INC.'s principal executive office address is 3500 Sunrise Highway, Building 100, Suite 100, Great River, New York 11739.

43.     Defendant LESSING'S, INC. does business as Sandbar at 55 Main St, Cold Spring Harbor, NY 11724.

44.     Defendant LESSING'S, INC. is an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

45.     Defendant LESSING'S, INC. has employees engaged in interstate commerce or in the production of goods for interstate commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce by any person.

46.     In each of the three years preceding the filing of this Complaint, Defendant LESSING'S, INC.'s annual gross volume of sales exceeded $500,000.

47.     Defendant LESSING'S, INC. exercises the power to—and delegates to managers and supervisors the power to—fire and hire employees, supervise and control employee work schedules and conditions of employment, maintain payroll records, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs, and the Class.

48.     Defendant LESSING'S, INC. issued Plaintiff a W-2 to Plaintiff listing LESSING'S, INC. as Plaintiff's employer.

49.     Defendant LESSING'S, INC. is also the premises name, owner, and operator of Riverview Restaurant, located at 3 CONSUELO PLACE OAKDALE, NY 11769, which is part of Lessing's Hospitality Group.

50.     Individual Defendants JAMES OLSEN, ELLEN BARRET, ANN BRESNAN, ROBERT B. FERGUSON, LAWRENCE LESSING III, JOHN S. LESSING, J.R., JOHN S. LESSING, MARK K. LESSING, MICHAEL S. LESSING, SANDRA M. LESSING, THOMAS S. MCKELVEY, and STEPHEN ZAGOR are also listed as principals on the liquor license for Riverview Restaurant.

### 3.2.2.  LESSING'S RESTAURANT SERVICES, INC.

51.     Defendant LESSING'S RESTAURANT SERVICES, INC. is a New York domestic business corporation, licensed to do business, and doing business, in the state of New York.

52.     Defendant LESSING'S RESTAURANT SERVICES, INC. designated an agent for service of process as MICHAEL S. LESSING / LESSING'S RESTAURANT SERVICES, INC. at 3500 Sunrise Highway, Suite 100, Building 100, New York, New York 11739.

53.     The Chief Executive Officer of Defendant LESSING'S RESTAURANT SERVICES, INC., is MICHAEL S. LESSING whose address is 3500 Sunrise Highway Suite 100, Building 100, Great River, New York 11739.

54.     Defendant LESSING'S RESTAURANT SERVICES, INC.'s principal executive office address is 3500 Sunrise Highway, Building 100, Suite 100, Great River, New York 11739.

55.     Defendant LESSING'S RESTAURANT SERVICES, INC. does business as "Sandbar," a restaurant at 55 Main St, Cold Spring Harbor, NY 11724.

56.     Defendant LESSING'S RESTAURANT SERVICES, INC. is an enterprise engaged in interstate commerce within the meaning of the FLSA.

57.     Defendant LESSING'S RESTAURANT SERVICES, INC. has employees engaged in interstate commerce or in the production of goods for interstate commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce by any person.

58.     Defendant LESSING'S RESTAURANT SERVICES, INC. is a covered employer within the meaning of the FLSA and New York Labor Law and, at all times relevant, employed Plaintiff and similarly situated employees.

59.     Defendant LESSING'S RESTAURANT SERVICES, INC. is an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

60.     Defendant LESSING'S RESTAURANT SERVICES, INC. has employees engaged in interstate commerce or in the production of goods for interstate commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce by any person.

61.     In each of the three years preceding the filing of this Complaint, Defendant LESSING'S RESTAURANT SERVICES, INC.'s annual gross volume of sales exceeded $500,000.

62.     Defendant LESSING'S RESTAURANT SERVICES, INC. exercises the power to—and delegates to managers and supervisors the power to—fire and hire employees, supervise, and control employee work schedules and conditions of employment, maintain payroll records, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs, and the Class.

63.     Defendant LESSING'S RESTAURANT SERVICES, INC. is listed as the premises name on the liquor license for Sandbar restaurant.

64.     Defendant LESSING'S RESTAURANT SERVICES, INC. is also the premises name for Lessing's Hospitality Group restaurant "Goldy's Gems" located at 5 Third Avenue Bay Shore, NY 11706.

65.     All individual Defendants herein are also listed as principals on the liquor license for Goldy's Gems.

66.     Defendant LESSING'S RESTAURANT SERVICES, INC. is also the premises name for Lessing's Hospitality Group restaurant "Maxwell's in Islip" located at 501 Main St Islip, NY 11751.

67.     Individual Defendants JAMES OLSEN, ELLEN BARRET, ANN BRESNAN, ROBERT B. FERGUSON, LAWRENCE LESSING III, JOHN S. LESSING, J.R., JOHN S. LESSING, MARK K. LESSING, MICHAEL S. LESSING, SANDRA M. LESSING, THOMAS S. MCKELVEY, and STEPHEN ZAGOR are also listed as principals on the liquor license for Maxwell's in Islip.

### 3.2.3. **JAMES OLSEN**

68.     Defendant JAMES OLSEN launched the Sandbar restaurant on behalf of Lessing's Hospitality Group. https://www.sandbarcoldspringharbor.com/about/.

69.     Defendant JAMES OLSEN is the general manager at the Sandbar restaurant. https://www.sandbarcoldspringharbor.com/team-member/james-olsen/.

70.     Defendant JAMES OLSEN was responsible for directing and supervising employees at Sandbar restaurant.

71.     Defendant JAMES OLSEN has stated that he believes it is his job to "take care" of his employees.

72.     Upon information and belief, as general manager, Defendant JAMES OLSEN has access to, and maintains, payroll records.

73.     Defendant JAMES OLSEN interviewed Plaintiff for a job.

74.     Defendant JAMES OLSEN extended a job offer to Plaintiff.

75.     Defendant JAMES OLSEN supervised Plaintiff at work.

76.     Defendant JAMES OLSEN is general manager at Defendant LESSING'S, INC.

77.    Defendant JAMES OLSEN is general manager at Defendant LESSING'S RESTAURANT SERVICES, INC.

78.    Defendant JAMES OLSEN has demanded that Plaintiff pay him portions of gratuities that she earned working at Sandbar.

79.    Defendant JAMES OLSEN has demanded that Plaintiff give portions of her gratuities to Sandbar when he claimed the "bank," was short.

80.    Defendant JAMES OLSEN has disciplined Plaintiff for alleged lateness.

81.    Defendant JAMES OLSEN managed Plaintiff's and other employees' work schedules.

82.    Defendant JAMES OLSEN exercises the power to—and delegates to managers and supervisors the power to—fire and hire employees, supervise and control employee work schedules and conditions of employment, maintain payroll records, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs, and the Class.

83.    At all times herein, Defendant JAMES OLSEN met the definition of an "employer" of Plaintiff under the FLSA, the NYLL, and the Regulations thereunder.

### 3.2.4.  **ELLEN BARRET**

84.    Defendant ELLEN BARRETT is the executive vice president or director of human resources at Lessing's Hospitality Group.

85.    Defendant ELLEN BARRETT communicated via email ellen@lessings.com.

86.    Defendant ELLEN BARRETT's office is at 3500 Sunrise Highway, Building 100, Suite 100, Great River, New York 11739.

87.    Defendant ELLEN BARRETT participated in hiring and onboarding Plaintiff, by, inter alia, communicating with Defendant manager JAMES OLSEN concerning Plaintiff's work schedule and providing benefits information.

88.     Defendant ELLEN BARRETT held herself out as the party to receive reports of harassment or discrimination.

89.     Defendant ELLEN BARRETT was designated to receive reports concerning harassment and discrimination.

90.     Defendant ELLEN BARRETT had power to investigate allegations of harassment or discrimination.

91.     Defendant ELLEN BARRETT had power to change Plaintiff's schedule so that Plaintiff would not work with one or more staff-members who were alleged to have participated in discriminatory or harassing behavior.

92.     Defendant ELLEN BARRETT directed Plaintiff, and other employees, to produce proof of results of COVID19 testing.

93.     Defendant ELLEN BARRETT had power to manage Plaintiff's and other employees' schedules.

94.     Defendant ELLEN BARRETT issued a W-2 to Plaintiff.

95.     Upon information and belief, Defendant ELLEN BARRETT maintains Defendants' payroll records.

96.     Defendant ELLEN BARRETT exercises the power to—and delegates to managers and supervisors the power to—fire and hire employees, supervise, and control employee work schedules and conditions of employment, maintain payroll records, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs, and the Class.

97.     At all times herein, Defendant JAMES OLSEN met the definition of an "employer" of Plaintiff under the FLSA, the NYLL, and the Regulations thereunder.

### 3.2.5. **ANN BRESNAN**

98.     Defendant, ANN BRESNAN, is named as a principal on the liquor license for the restaurant Sandbar.

99.     Upon information and belief, based on her status as a liquor license principal, Defendant ANN BRESNAN has the power to hire, fire, supervise, and control employees who serve alcohol, such as Plaintiff and moreover has the power to access and maintain records.

100.    At all times herein, Defendant ANN BRESNAN met the definition of an "employer" of Plaintiff under the FLSA, the NYLL, and the Regulations thereunder.

### 3.2.6. **ROBERT B. FERGUSON**

101.    Defendant, ROBERT B. FERGUSON, is a principal on the liquor license for the restaurant Sandbar.

102.    Upon information and belief, based on his status as a liquor license principal, Defendant ROBERT B. FERGUSON has the power to hire, fire, supervise, and control employees who serve alcohol, such as Plaintiff and moreover has the power to access and maintain records.

103.    At all times herein, Defendant ROBERT FERGUSON met the definition of an "employer" of Plaintiff under the FLSA, the NYLL, and the Regulations thereunder.

### 3.2.7. **LAWRENCE LESSING III**

104.    Defendant, LAWRENCE LESSING III, is a principal on the liquor license for the restaurant Sandbar.

105.    Defendant, LAWRENCE LESSING III, is the senior advisor to Lessing's Hospitality Group. https://www.lessings.com/corporate/about .

106.    Defendant LARENCE LESSING III is the vice president of Defendant LESSING's INC.

107.    Upon information and belief, Defendant LAWRENCE LESSING III has the power to hire, fire, supervise, and control employees such as Plaintiff and moreover has the power to access and maintain records.

108.    At all times herein, Defendant LAWRENCE LESSING III met the definition of an "employer" of Plaintiff under the FLSA, the NYLL, and the Regulations thereunder.

### 3.2.8.  **JOHN S. LESSING Jr.**

109.    Defendant, JOHN S. LESSING Jr, is a principal on the liquor license for the restaurant Sandbar.

110.    Defendant JOHN S. LESSING Jr, is the executive vice president of Defendant LESSING'S, INC.

111.    Upon information and belief, Defendant JOHN S. LESSING Jr has the power to hire, fire, supervise, and control employees such as Plaintiff and moreover has the power to access and maintain records.

112.    At all times herein, Defendant JOHN S. LESSING Jr met the definition of an "employer" of Plaintiff under the FLSA, the NYLL, and the Regulations thereunder.

### 3.2.9.  **JOHN S. LESSING**

113.    Defendant, JOHN S. LESSING, is a principal on the liquor license for the restaurant Sandbar.

114.    Defendant JOHN S. LESSING is the senior advisor for Lessing's Hospitality Group. https://www.lessings.com/corporate/about.

115.    Defendant JOHN S. LESSING is the chairman of the board of Defendant LESSING'S, INC.

116.    Defendant JOHN S. LESSING is the Chief Executive Officer of Defendant LESSING'S INC.

117.     Upon information and belief, Defendant JOHN S. LESSING has the power to hire, fire, supervise, and control employees such as Plaintiff and moreover has the power to access and maintain records.

118.     At all times herein, Defendant JOHN S. LESSING met the definition of an "employer" of Plaintiff under the FLSA, the NYLL, and the Regulations thereunder.

### 3.2.10.  **MARK K. LESSING**

119.     Defendant, MARK K. LESSING, is a principal on the liquor license for the restaurant Sandbar.

120.     Defendant MARK K. LESSING is the executive vice president at Defendant LESSING'S, INC.

121.     Upon information and belief, Defendant MARK K. LESSING hired Defendant JAMES OLSEN.

122.     Defendant MARK K. LESSING oversees the restaurant and franchise group.

123.     Defendant MARK K. LESSING has been involved in all facets of the restaurant and franchise businesses, from development to operations to acquisitions.

124.     Defendant MARK K. LESSING interviewed employees for hire at Sandbar.

125.     Defendant MARK K. LESSING frequently visited the Sandbar restaurant.

126.     Upon information and belief, Defendant MARK K. LESSING has the power to hire, fire, supervise, and control employees such as Plaintiff and moreover has the power to access and maintain records.

127.     At all times herein, Defendant MARK K. LESSING met the definition of an "employer" of Plaintiff under the FLSA, the NYLL, and the Regulations thereunder.

### 3.2.11. **MICHAEL S. LESSING**

128.    Defendant, MICHAEL S. LESSING, is a principal on the liquor license for the restaurant Sandbar.

129.    Defendant MICHAEL S. LESSING is the Chief Executive Officer of Lessing's Hospitality Group. https://www.lessings.com/corporate/about.

130.    Defendant MICHAEL S. LESSING has served as the Chief Operating Officer of Defendant LESSING'S INC. https://libn.com/2016/12/09/q-a-with-michael-lessing/.

131.    Defendant MICHAEL S. LESSING has bound Defendant LESSING'S INC. to contracts, such as exclusive catering agreements by signing such agreements on behalf of Defendant LESSING'S INC.

132.    Defendant MICHAEL S. LESSING regularly visited the Sandbar restaurant.

133.    Upon information and belief, Defendant MICHAEL S. LESSING has the power to hire, fire, supervise, and control employees such as Plaintiff and moreover has the power to access and maintain records.

134.    At all times herein, Defendant MICHAEL S. LESSING met the definition of an "employer" of Plaintiff under the FLSA, the NYLL, and the Regulations thereunder.

### 3.2.12. **SANDRA M. LESSING**

135.    Defendant, SANDRA M. LESSING, is a principal on the liquor license for the restaurant Sandbar.

136.    Defendant SANDRA M. LESSING issued directions to Plaintiff at work.

137.    Defendant SANDRA M. LESSING supervised Plaintiff and other employees.

138.    Upon information and belief, Defendant SANDRA M. LESSING would observe the work of the restaurant and its employees and issue instructions, directions, and feedback to

Defendant JAMES OLSEN who would then issue instructions, directions, and feedback to employees such as Plaintiff.

139.    Upon information and belief, Defendant SANDRA M. LESSING has the power to hire, fire, supervise, and control employees such as Plaintiff and moreover has the power to access and maintain records.

140.    At all times herein, Defendant SANDRA M. LESSING met the definition of an "employer" of Plaintiff under the FLSA, the NYLL, and the Regulations thereunder.

### 3.2.13. **THOMAS S. MCKELVEY**

141.    Defendant, THOMAS S. MCKELVEY, is a principal on the liquor license for the restaurant Sandbar.

142.    Defendant THOMAS S. MCKELVEY issued directions to make corrections concerning employees. Upon information and belief, Defendant THOMAS S. MCKELVEY has the power to hire, fire, supervise, and control employees such as Plaintiff and moreover has the power to access and maintain records.

143.    At all times herein, Defendant THOMAS S. MCKELVEY met the definition of an "employer" of Plaintiff under the FLSA, the NYLL, and the Regulations thereunder.

### 3.2.14. **STEPHEN ZAGOR**

144.    Defendant, STEPHEN ZAGOR, is a principal on the liquor license for the restaurant Sandbar.

145.    Defendant STEPHEN ZAGOR issued directions to make corrections concerning employees. Upon information and belief, Defendant STEPHEN ZAGOR has the power to hire, fire, supervise, and control employees such as Plaintiff and moreover has the power to access and maintain records.

146.     At all times herein, Defendant STEPHEN ZAGOR met the definition of an "employer" of Plaintiff under the FLSA, the NYLL, and the Regulations thereunder.

4. **STATEMENT OF FACTS**

147.     Sandbar's hours of operation are from approximately 10:00 AM to approximately 12:00 midnight or later if changed by the general manager.

4.1. **Plaintiff's Wages and Hours**

148.     From approximately the start of Plaintiff's employment to approximately January 2021, Plaintiff worked approximately sixty (60) hours per week.

149.     From approximately January 2021 to approximately the end of Plaintiff's employment, Plaintiff worked approximately eleven (11) hours per week.

150.     From the start of Plaintiff's employment to approximately January 2021, Plaintiff worked approximately three (3) days per week in which the spread of hours exceeded ten (10).

151.     Plaintiff was paid $0 in wages.

152.     Plaintiff's sole compensation was through gratuities or tips which she earned serving customers.

153.     The tips or gratuities, that were Plaintiff's sole compensation, were paid in cash.

154.     Plaintiff was not paid minimum wage.

155.     Plaintiff was not paid any minimum hourly rate.

156.     Plaintiff was not paid an hourly rate of pay.

157.     Plaintiff was not paid overtime at a wage rate of 1 ½ times the employee's regular rate for hours worked in excess of 40 hours in one workweek.

158.     From approximately the start of Plaintiff's employment to approximately January 2021, at least one time per week, Defendant JAMES OLSEN required Plaintiff to pay Defendant

JAMES OLSEN or Sandbar restaurant approximately $62.50 of her gratuities/tips when Defendant JAMES OLSEN claimed the "bank" or restaurant cash was short or incorrect.

159.    Plaintiff was required to spend at least 20% or two hours of their her performing non-tipped work unrelated to her duties as a tipped worker.

160.    Plaintiff was required to perform nontipped work that included preparing food, cleaning, preparing the restaurant at opening and closing, rolling silverware, setting up banquets for special events, food running that was untipped, taking out the trash, wiping down the bar and sanitizing it, and cleaning bottles.

161.    Plaintiff spent more than two hours or 20% of each shift doing nontipped work.

162.    Plaintiff did not receive a cash wage as required in N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.3.

163.    If Defendants considered any portion of gratuities to constitute a tip credit, then Defendants' tip credits exceeded the hourly credit rates listed in N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.3.

164.    Plaintiff was not paid an additional hour of pay at the basic minimum hourly rate for each day on which the spread of hours exceeded ten (10).

165.    Plaintiff was required to bear the cost of maintaining required uniforms including washing and dry cleaning.

166.    Plaintiff was not paid uniform maintenance pay at weekly rates set forth in N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.7.

**4.2. <u>Defendants' Recordkeeping Practices</u>**

167.    Upon information and belief, Defendants have access to records to establish which non-exempt employees were paid solely in tips and were not provided with a cash wage.

168.    Upon information and belief, Plaintiff's employers failed to establish, maintain, and preserve for at least six years, weekly payroll records showing Plaintiff's correct occupational classification.

169.    Although Plaintiff was required to indicate the hours of her work, and workplace schedules were generated, Plaintiff was not provided copies of the payroll records to indicate the hours worked.

170.    Upon information and belief, Plaintiff's employers failed to establish, maintain, and preserve for at least six years, weekly payroll records showing the number of hours worked daily and weekly, including the time of arrival and departure for each employee working a split shift or spread of hours exceeding 10.

171.    Upon information and belief, Plaintiff's employers failed to establish, maintain, and preserve for at least six years, weekly payroll records showing the amount of gross wages.

172.    Upon information and belief, Plaintiff's employers failed to establish, maintain, and preserve for at least six years, weekly payroll records showing the amount of deductions from gross wages.

173.    Upon information and belief, Plaintiff's employers failed to establish, maintain, and preserve for at least six years, weekly payroll records showing the amount of net wages.

174.    Upon information and belief, Plaintiff's employers failed to establish, maintain, and preserve for at least six years, weekly payroll records showing tip credits, if any, claimed as part of the minimum wage.

175.    Upon information and belief, Plaintiff's employers failed to establish, maintain, and preserve for at least six years, weekly payroll records showing meal credits, if any, claimed as part of wages.

176.    Upon information and belief, Plaintiff's employers failed to establish, maintain, and preserve for at least six years, weekly payroll records showing money paid in cash.

177.    Upon information and belief, Plaintiff's employers failed to establish, maintain, and preserve for at least six years, weekly payroll records showing whether Plaintiff has uniforms maintained by the employer.

178.    Upon information and belief, Defendants failed to establish, maintain, and preserve, for at least six years, records which include a daily log of the tips collected by each employee on each shift, whether in cash or by credit card, list of occupations that the employer deems eligible to receive tips through a tip sharing or tip pool system, the shares of tips that each occupation is scheduled to receive from tip sharing or tip pooling, and the amount in tips that each employee receives from the tip share or tip pool, by date.

**4.3. <u>Notices and Statements</u>**

179.    Plaintiff was not provided a written tip credit notice.

180.    Plaintiff was not provided with a tip credit notice as required in N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.2.

181.    Plaintiff was never informed by Defendants of the provisions of Section 203(m) of the Fair Labor Standards Act with respect to any "tip credit."

182.    Defendants made unauthorized deductions from Plaintiff's gratuities, including but not necessarily limited to, for purported cash shortages or losses in violation of N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.7.

183.    Defendants made unauthorized deductions from Plaintiff's gratuities in violation of N.Y. Lab. Law § 193.

184.    Plaintiff was not provided with a statement, commonly referred to as a pay stub, with every payment of wages listing hours of work, rates paid, gross wages, credits claimed and deductions and net wages as required under N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.3.

185.    Defendants knowingly and willfully failed to provide proper wage and hour notices, at the date of hiring and annually thereafter, to Plaintiff, as required by New York Labor Law § 195(1).

186.    Defendants knowingly and willfully failed to provide proper wage statements to Plaintiff and Class members with every wage payment, as required by New York Labor Law § 195(3).

187.    In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that clearly entails a concrete risk of harm to an interest identified by the New York State legislature. Defendants' failure to provide such notices trivializes the importance of these notices in protecting Plaintiff' interest in ensuring proper pay. Despite Defendants' conduct, there is a reason why the New York legislature concluded that enacting wage notice provisions would "far better protect workers' rights and interests" than existing penalties. See N.Y. Spons. Mem., 2010 S.B. 8380. Written notices function as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves. Deprivation of such notices necessarily entails a significant risk of harm to the employees' concrete interest in being paid properly and timely.

188.    Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff. Defendants' conduct actually harmed Plaintiff. Defendants' failure to provide paystubs listing all hours and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest Defendants' calculations, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff' rights. This conduct ensured Defendants'

ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Moreover, Defendants failure to provide wage notices allowed Defendants to hide the proper frequency of pay to employees. Defendants' failure to provide a wage notice to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

189.    Due to Defendants' failure to provide legally mandated notices such as earning statements and wage notices, Defendants were able to hide their wrongdoing from employees, and continue to attempt to hide their wrongdoing necessitating the current litigation. The failure to provide New York Labor Law notices continues to result in delayed payment of all proper wages owed to Plaintiff.

190.    Upon information and belief, notices issued by the Department of Labor about wage and hour laws, tip appropriations, illegal deduction provisions and any other labor laws that the Commissioner deems appropriate were not posted in a sufficiently conspicuous place in the Sandbar restaurant.

**4.4. <u>Powers and Responsibilities of Liquor License Principals</u>**

191.    In New York, a liquor license grants the owner or possessor of the premises control over the food and beverage. N. Y. Alco. Bev. Cont. Law. § 106(1). These facts are sufficient to establish his right and ability to supervise the infringing activities.

192.    The rules and regulations associated with the liquor licensing process inherently create a collaborative relationship between the business and the principal officer's authority to provide a service as it relates to food and beverage.

193.    An individual's name listed as a principal on a liquor license suggests a general ability to supervise the establishment's operations and enjoy its profits. *Jimenez v. Bosie, LLC,* No. 19 CIV. 11570 (ER), 2021 WL 2941916 (S.D.N.Y. July 12, 2021).

194.    An individual's name listed as a principal on a liquor license also suggests (s)he keeps and maintains adequate records of all transactions involving the business transacted by such licensee which show the amount of alcoholic beverages, in gallons, purchased by such licensee together with the names, license numbers and places of business of the persons from whom the same were purchased, the amount involved in such purchases, as well as the sales of alcoholic beverages made by such licensee.

195.    According to the New York State Liquor Authority Handbook for Retail Licenses, the licensee is responsible for the activities of employees and patrons in all parts of the licensed premises, even if not always physically present.

196.    According to the New York State Liquor Authority Handbook for Retail Licenses, the licensee must keep adequate books and records of all transactions involving the licensed business, including records concerning employees, whether full or part time.

197.    According to the New York State Liquor Authority Handbook for Retail Licenses, the licensee is subject to disciplinary action whether (s)he, or an employee, serves a visibly intoxicated person or minor, and accordingly is recommended to train and supervise employees concerning service of alcohol.

198.    According to the New York State Liquor Authority Handbook for Retail Licenses, the liquor license principal(s) is responsible for not allowing the establishment to become disorderly. The liquor license principal(s) have an obligation to exercise reasonable diligence and provide adequate supervision over the conduct of the licensed premises and patrons.

199.    In applying to hold a liquor license, the applicant must confirm the location of where alcohol is stored.

200.    The liquor license holder has a direct or indirect economic interest in the establishment.

201.    In applying to hold a liquor license, the applicant must confirm, among other items, whether the restaurant has a full kitchen and will serve full entrée like meals.

202.    In applying to hold a liquor license, the applicant must provide a diagram of the premises.

**5.  Class and Collective Allegations**

203.    Upon information and belief, proposed members of the FLSA Collective and Class were subjected to a similar policy as Plaintiff in that members of the FLSA Collective and Class were not paid cash wages for minimum, or overtime hours worked or spread of hours.

204.    Upon information and belief, proposed members of the FLSA Collective and Class were subjected to a similar policy as Plaintiff in that members of the FLSA Collective and Class were not provided with tip credit notices, wage notices, or wage statements as required under the New York Labor Law and supporting regulations.

**5.1.  Collective Action Allegations**

205.    Plaintiff brings the claims in this Complaint arising out of the FLSA on behalf of herself and all similarly situated non-exempt workers who are current and former employees of Defendants since the date three years prior to the filing of this action who elect to opt-in to this action (the "FLSA Collective").

206.    The FLSA Collective consists of non-exempt workers who have been victims of Defendants' common policy and practices that have violated their rights under the FLSA by, inter alia, willfully denying them minimum and overtime wages and misappropriating gratuities.

207.    As part of their regular business practices, Defendants have intentionally, willfully, and repeatedly harmed the FLSA Collective by engaging in a pattern, practice, and/or policy of violating the FLSA and New York Labor Law. This pattern, practice, and/or policy includes, inter alia, the following:

a.  failing to keep accurate records of hours worked by the FLSA Collective as required by law;

b.  failing to pay the FLSA Collective minimum wage for their first forty hours of work per workweek; and

c.  failing to pay the FLSA Collective overtime pay for all hours worked over forty per workweek.

d.  withholding portions of the tips earned by members of the FLSA Collective;

208.    Defendants have engaged in unlawful conduct by adhering to a corporate policy that minimizes labor costs by denying employees their compensation.

209.    Defendants' unlawful conduct has been intentional, willful, and in bad faith and has caused significant monetary damage to the FLSA Collective.

210.    The FLSA Collective would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Those similarly situated employees are known to the Defendants and are readily identifiable and locatable through their records. Those similarly situated employees should be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216(b).

**5.2. <u>Class Action Allegations</u>**

211.    Plaintiff brings the state law claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees employed by Defendants at Sandbar on or after the date that is six years before the filing of the Original Complaint in this case as defined herein.

212.    All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rates

of pay for each Class member are also determinable from Defendants' records. For purposes of

notice and other purposes related to this action, their names and addresses are readily available from

Defendants. Notice can be provided by means permissible under said F.R.C.P. 23.

213.    The proposed Class is so numerous that joinder of all members is impracticable, and

the disposition of their claims as a class will benefit the parties and the court. Although the precise

number of such persons is unknown, and the facts on which the calculation of that number are

presently within the sole control of Defendant, upon information and belief, there are more than

forty (40) members of the Class.

214.    Plaintiff's claims are typical of those claims which could be alleged by any member of

the Class, and the relief sought is typical of the relief which would be sought by each member of the

Class in separate actions. All the Class members were subject to the same corporate practices of

Defendants, as alleged herein, of failing to pay minimum wage, overtime and spread of hours

compensation, illegally retaining tips. Defendants' corporate-wide policies and practices affected all

Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful

acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries

and damages arising from the same unlawful policies, practices and procedures.

215.    Plaintiff is able to fairly and adequately protect the interests of the Class and have no

interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and

competent in employment litigation and have previously represented plaintiffs in wage and hour

cases.

216.    A class action is superior to other available methods for the fair and efficient

adjudication of the controversy - particularly in the context of wage and hour litigation where

individual class members lack the financial resources to vigorously prosecute a lawsuit against

corporate Defendants. Class action treatment will permit a large number of similarly situated

persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

217.    Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

218.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a.  Whether Defendants employed Plaintiff and the Class members within the meaning of New York law.

b.  At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and the Class members for their work.

c.  Whether Defendants paid Plaintiffs and the Class members the minimum wage for all hours worked.

d.  Whether Defendants properly compensated Plaintiff and Class members for overtime.

e.  Whether Defendants illegally retained portions of Plaintiffs' tips and the Class members' tips.

f.  Whether Defendants paid employees New York's "spread of hours" premium when their workdays exceeded 10 hours.

g.  Whether Defendants provided Plaintiffs and Class members with the proper notices and statements.

## 6.  CLAIMS

### 6.1.  Claim 1 – Fair Labor Standards Act – Unpaid Minimum Wages

219.    Plaintiff repeats and re-alleges all foregoing paragraphs as if fully set forth herein.

220.    Defendants are employers within the meaning of 29 U.S.C. §§ 203(e) and 206(a) and employed Plaintiff and the FLSA Collective.

221.    The FLSA and New York Labor Law require that employers pay employees a minimum wage for all hours worked weekly up to forty.

222.    The minimum wage provisions set forth in the FLSA, 29 U.S.C. §§ 201, et seq. and the supporting federal regulations, apply to Defendants.

223.     Defendants failed to pay Plaintiff and the FLSA Collective the minimum wages to which they were entitled under the FLSA.

224.     Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and did not make a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff and the FLSA Collective.

225.     As a result of Defendants' willful violations of the FLSA, Plaintiff and other non-exempt workers have suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, pre- and post-judgment interest, attorneys' fees and costs of this action, and other compensation pursuant to 29 U.S.C. § 216(b).

**6.2. <u>Claim 2 – New York Labor Law - Unpaid Minimum Wages</u>**

226.     Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

227.     Defendants are employers within the meaning of the New York Labor Law §§ 190, 651(5), 652, and supporting New York State Department of Labor ("NYDOL") Regulations and employed Plaintiff and other similarly situated non-exempt workers.

228.     The New York Labor Law and its supporting regulations require that employers pay employees at least the minimum wage for each hour worked up to forty per workweek.

229.     The minimum wage provisions of Article 19 of the New York Labor Law and the supporting NYDOL Regulations apply to Defendants.

230.     Defendants failed to pay Plaintiff and other similarly situated non-exempt workers the minimum wages to which they are entitled under the New York Labor Law and its supporting NYDOL regulations.

231.    Defendants willfully violated the New York Labor Law by knowingly and intentionally failing to pay Plaintiff and other similarly situated non-exempt workers minimum hourly wages.

232.    As a result of Defendants' violations of the New York Labor Law, Plaintiff and other similarly situated non-exempt workers are entitled to recover unpaid minimum wages, reasonable attorneys' fees and costs, liquidated damages, and pre- and post-judgment interest.

### 6.3. Claim 3 – Fair Labor Standards Act – Unpaid Overtime Wages

233.    Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

234.    Defendants are employers within the meaning of 29 U.S.C. §§ 203(d) and 207(a) and employed Plaintiffs and the FLSA Collective.

235.    Defendants were required to pay Plaintiffs and the FLSA Collective overtime wages at a rate of one and one-half (1.5) times their regular rate for all hours worked in excess of forty hours per workweek pursuant to the overtime wage provisions set forth in the FLSA, 29 U.S.C. § 207, et seq.

236.    Defendants failed to pay Plaintiffs and the FLSA Collective the overtime wages to which they were entitled under the FLSA.

237.    Defendants were or should have been aware that the practices described in this Complaint were unlawful and have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the FLSA Collective

238.    Defendants willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiff and the FLSA Collective overtime wages.

239.    As a result of Defendants' willful violations of the FLSA, Plaintiff and the FLSA Collective are entitled to recover unpaid overtime wages, liquidated damages, pre-and post-judgment interest, and reasonable attorneys' fees and costs.

### 6.4. <u>Claim 4 – New York Labor Law – Unpaid Overtime Wages</u>

240.    Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

241.    Under the New York Labor Law and supporting NYDOL regulations, including 12 NYCRR § 146-1.4, Defendants were required to pay Plaintiffs one and one-half (1 1/2) times their regular rate of pay for all hours worked in excess of forty per workweek.

242.    Defendants failed to pay Plaintiff the overtime wages to which she was entitled under the New York Labor Law and its supporting regulations.

243.    Defendants willfully violated the New York Labor Law and its supporting regulations by knowingly and intentionally failing to pay Plaintiff overtime wages.

244.    As a result of Defendants' willful violations of the New York Labor Law, Plaintiff is entitled to recover unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

### 6.5. <u>Claim 5 – New York Labor Law – Unpaid Spread of Hours Pay</u>

245.    Plaintiff repeats and incorporates all foregoing paragraphs as if fully set forth herein.

246.    Defendants willfully failed to pay Plaintiff additional compensation of one hour of pay at the basic minimum hourly wage rate for each day during which their shifts spanned over ten hours, in violation of the New York Labor Law and its supporting NYDOL regulations, including 12 NYCRR § 146-1.6.

247.    As a result of Defendants' willful violations of the New York Labor Law, Plaintiff is entitled to recover unpaid spread-of-hours pay, liquidated damages, reasonable attorneys' fees and costs, and pre- and post-judgment interest.

### 6.6. <u>Claim 6 – New York Labor Law Wage Theft Prevention Act – Failure to Provide Wage Notices</u>

248.    Plaintiff repeats and incorporates all foregoing paragraphs as if fully set forth herein.

249.    The New York Labor Law and WTPA require employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.

250.    Defendants failed to furnish Plaintiff at their time of hire and when the wage rates changed with a wage notice containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage including tip, meal, or lodging allowances; the regular payday designated by the employer in accordance with New York Labor Law § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business and a mailing address if different; the telephone number of the employer, and anything otherwise required by law; in violation of New York Labor Law § 195(1).

251.    As a result of Defendants' violations of New York Labor Law § 195(1), Plaintiffs is entitled to recover statutory damages, and reasonable attorneys' fees and costs of the action, pursuant to New York Labor Law § 198(1-b).

**6.7. <u>Claim 7 – New York Labor Law Wage Theft Prevention Act - Failure to Provide Wage Statements</u>**

252.    Plaintiff repeats and incorporates all foregoing paragraphs as if fully set forth herein.

253.    The New York Labor Law and the WTPA require employers to provide employees with an accurate wage statement with each payment of wages.

254.    Throughout Plaintiff's employment with Defendants, Defendants paid Plaintiff without providing them with a wage statement at the end of every pay period accurately listing, inter alia, the regular and overtime rate or rates of pay; the number of regular and overtime hours worked per pay period; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages, in violation of New York Labor Law § 195(3).

255.     As a result of Defendants' violations of New York Labor Law § 195(3), Plaintiff is entitled to recover statutory damages, and reasonable attorneys' fees and costs of the action, pursuant to New York Labor Law § 198(1-d).

### 6.8. Claim 8 – New York Labor Law – Misappropriation of Gratuities, N.Y. Lab. L. § 196-d

256.     Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

257.     New York Labor Law § 193(1) prohibits employers from making any deductions from an employee's wages except for those permitted by law.

258.     New York Labor Law § 196-d prohibits any employer or his agents, including managers, from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity of any charge purported to be a gratuity for an employee.

259.     At all times relevant, Defendants demanded or accepted, directly or indirectly, or retained a portion of gratuities belonging to Plaintiff.

260.     At all times relevant, defendants have been agents or officers of a corporation within the meaning of New York Labor Law, Article 6, § 196-d and the supporting New York State Department of Labor regulations.

261.     By Defendants' knowing or intentional demand for, acceptance of, and /or retention of the gratuities paid by customers, defendants have willfully violated New York Labor Law, Article 6 § 196-d and the supporting New York State Department of Labor Regulations.

262.     As a result of defendants' willful violations of the New York Labor Law, Plaintiff and the tipped employees are entitled to recover from defendants their misappropriated gratuities, reasonable attorneys' fees, liquidated damages and pre-judgment and post-judgment interest.

### 6.9. Claim 9 - New York Labor Law – Unlawful Deductions from Wages

263.     Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

264. Defendants maintained a policy and practice whereby they took unlawful deductions from plaintiffs and the tipped employees' wages.

265. The deductions made were not authorized in writing by plaintiffs and the tipped employees and were not for the benefit of plaintiffs and the tipped employees.

266. Throughout their knowing or intentional efforts to permit unauthorized deductions by separate transaction or directly from the wages of plaintiffs and the tipped employees, Defendants have willfully violated New York Labor Law, Article 6, § 190 *et seq.,* and the supporting New York State Department of Labor Regulations.

267. Due to defendants' willful violations of the New York Labor Law, plaintiffs and the tipped employees are entitled to recovery from defendants the costs of maintaining their uniforms, liquidated damages as provided for by the New York Labor Law, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

### 6.10.    Claim 10 - New York Labor Law - Uniform Violations

268. Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

269. Defendants required plaintiff and the tipped employees to wear a uniform consisting of a blue polo shirt.

270. Defendants failed to launder and / or maintain the required uniforms for Plaintiff and the tipped employees and failed to pay them the required weekly amount in addition to the required minimum wage.

271. By failing to pay Plaintiff and the tipped employees for the maintenance of the required uniforms, defendants have willfully violated the New York Labor Law, and the supporting New York State Department of Labor Regulations.

272. Due to defendants' willful violations of the New York Labor Law, Plaintiff and the tipped employees are entitled to recovery from defendants the costs of maintaining their uniforms,

liquidated damages as provided for by the New York Labor Law, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

7. **PRAYER FOR RELIEF**

    **WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment:

    a.  authorizing the issuance of notice at the earliest possible time to all potential FLSA Collective members, composed of non-exempt tipped workers who were employed by Defendants during the three years immediately preceding the filing of this action. This notice should inform them that this action has been filed, describe the nature of the action, and explain their right to opt into this lawsuit;

    b.  Certification of this action as a class action under Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the Rule 23 Class Members and appointing Plaintiff Humphrey and his counsel to represent the Rule 23 Class;

    c.  Equitably tolling the statute of limitations under the FLSA;

    d.  declaring that Defendants have violated the minimum and overtime wage provisions of the FLSA and the NYLL, and supporting regulations;

    e.  declaring that Defendants violated the spread-of-hours pay provisions of the NYLL and NYDOL regulations;

    f.  declaring that Defendants violated the wage statement provisions of the NYLL's WTPA;

    g.  declaring that Defendants' violations of the FLSA and the NYLL were willful;

    h.  awarding Plaintiff damages for unpaid minimum and overtime wages;

    i.  awarding Plaintiff unpaid spread-of-hours pay;

    j.  awarding Plaintiff liquidated damages pursuant to the FLSA and NYLL;

k.  awarding Plaintiff statutory damages as a result of Defendants' failure to furnish

Plaintiffs with accurate wage statements pursuant to the NYLL's WTPA;

l.  awarding Plaintiff pre-judgment and post-judgment interest under the FLSA and the

NYLL;

m.  awarding Plaintiff reasonable attorneys' fees and costs pursuant to the FLSA and the

NYLL; and

n.  awarding such other and further relief as the Court deems just and proper.

## 8.  **DEMAND FOR TRIAL BY JURY**

273.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a

trial by jury in this action.


Dated: April 13, 2023                         Signed,
            Astoria, New York

                                     By:  _____*/ s/ Clifford Tucker*_____
                                        Clifford Tucker, Esq.
                                        Sacco & Fillas LLP
                                        31-19 Newtown Ave., 7Th floor
                                        Astoria, New York 11102
                                        Ph: 718-269-2243
                                        CTucker@SaccoFillas.com

## NOTICE OF INTENTION TO ENFORCE SHAREHOLDER
## LIABILITY FOR SERVICES RENDERED

**TO**: LESSING'S, INC., LESSING'S RESTAURANT SERVICES, INC.

**PLEASE TAKE NOTICE THAT** pursuant to the provisions of Section 630 of the Business Corporation Law of New York and Section 609 of the Limited Liability Company Law of New York, you are hereby notified that the Plaintiff and others similarly situated intend to charge you and hold you personally liable, jointly and severally, as one of the ten largest shareholders and/or members of for all debts, wages, and/or salaries due and owing to them as laborers, servants, and/or employees of the said corporation/LLC for services performed by them for the said corporation/LLC within the six (6) years preceding the date of this notice and have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.

Dated: April 13, 2023  
      Astoria, New York

Signed,

By: _____*/s/ Clifford Tucker*_____  
    Clifford Tucker, Esq.  
    Sacco & Fillas LLP  
    31-19 Newtown Ave., 7Th floor  
    Astoria, New York 11102  
    Ph: 718-269-2243  
    CTucker@SaccoFillas.com

**DEMAND BY EMPLOYEES TO INSPECT SHARE RECORDS AND MINUTES PURSUANT TO SECTION 624 OF THE NEW YORK STATE BUSINESS CORPORATION LAW**

**TO**: LESSING'S, INC., LESSING'S RESTAURANT SERVICES, INC.

PLEASE TAKE NOTICE THAT the Plaintiff, LESSING'S, INC., LESSING'S RESTAURANT SERVICES, INC and others similarly situated as employees of the above corporation or LLC who intend to demand, pursuant to the provisions of Section 630 of the Business Corporation Law of New York, and Section 609 of the Limited Liability Company Law of New York, payment of debts, wages, and/or salaries due and owing to them as laborers, servants, and/or employees of the above corporation or LLC for services performed by them for the above corporation or LLC within the six (6) years preceding the date of this notice from the ten largest shareholders of the above corporation or LLC, and who have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.

HEREBY DEMAND the right to examine, in person or by agent or attorney, during usual business hours, the minutes of the proceedings of the shareholders and records of shareholders of the above corporation/LLC and to make extracts therefrom on or after five (5) days from receipt of this notice.

Dated: April 13, 2023
            Astoria, New York

Signed,

By: _____/s/ Clifford Tucker_____
      Clifford Tucker, Esq.
      Sacco & Fillas LLP
      31-19 Newtown Ave., 7Th floor
      Astoria, New York 11102
      Ph: 718-269-2243
      CTucker@SaccoFillas.com

## CONSENT TO JOIN ACTION

## REQUEST TO BECOME A PARTY-PLAINTIFF

I hereby consent to be a party plaintiff in an action to recover unpaid wages, including but not limited to minimum wages, overtime, spread of hours, gratuities, statutory and liquidated damages, attorney's fees, costs, interest, and other sums owing to me and other similarly situated employees under the federal Fair Labor Standards Act, New York Labor Law, and implementing regulations and wage orders.

I hereby authorize Sacco & Fillas LLP to pursue any claims I may have, including such litigation as may be necessary, and I hereby consent, agree, and option to become a plaintiff herein and to be bound by any settlement of this action or adjudication by the Court.

Translation / Traducción:

Por la presente, doy mi consentimiento para ser parte demandante en una acción para recuperar salarios no pagados, incluidos, entre otros, salarios mínimos, horas extras, horarios extendidos, gratificaciones, daños legales y liquidados, honorarios de abogados, costos, intereses y otras sumas que se me adeudan. y otros empleados en situaciones similares bajo la Ley Federal de Normas Laborales Justas, la Ley Laboral de Nueva York y las reglamentaciones de implementación y órdenes salariales.

Por la presente, autorizo a Sacco & Fillas LLP a presentar cualquier reclamo que pueda tener, incluido el litigio que sea necesario, y por la presente consiento, acepto y tengo la opción de convertirme en demandante en este documento y estar obligado por cualquier acuerdo de esta acción o adjudicación por La corte.

Name/Nombre: **Jessica Eisenbarth**

Legal Representative:
Sacco & Fillas LLP
3119 Newtown Ave, Seventh Floor
Astoria, NY 11102

Signature/Firma: Jessica Eisenbarth (Feb 21, 2023 15:39 EST)     Date/Fecha: **Feb 21, 2023**

# Consent to sue - FLSA and NYLL

**Final Audit Report**                                           2023-02-21

| | |
|---|---|
| Created: | 2023-02-21 |
| By: | Clifford Tucker (ctucker@saccofillas.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAsbggoP_cKCRYX4017vbbBLcFqZGRoI_M |

## "Consent to sue - FLSA and NYLL" History

📄 Document created by Clifford Tucker (ctucker@saccofillas.com)
2023-02-21 - 8:37:15 PM GMT

✉ Document emailed to jessica.eisenbarth@gmail.com for signature
2023-02-21 - 8:37:30 PM GMT

📄 Email viewed by jessica.eisenbarth@gmail.com
2023-02-21 - 8:39:40 PM GMT

✍ Signer jessica.eisenbarth@gmail.com entered name at signing as Jessica Eisenbarth
2023-02-21 - 8:39:54 PM GMT

✍ Document e-signed by Jessica Eisenbarth (jessica.eisenbarth@gmail.com)
Signature Date: 2023-02-21 - 8:39:56 PM GMT - Time Source: server

✔ Agreement completed.
2023-02-21 - 8:39:56 PM GMT

**Adobe Acrobat Sign**